UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION

WILLIE McQUEEN,

     Petitioner,                       Civil No. 2:07-CV-12107
                                       HONORABLE DENISE PAGE HOOD
v.                                     UNITED STATES DISTRICT JUDGE

MILLICENT WARREN,

     Respondent,
_____/

               **OPINION AND ORDER DENYING PETITION
                     FOR WRIT OF HABEAS CORPUS**

**I.    INTRODUCTION**

Willie McQueen, ("Petitioner"), presently confined at the Pugsley Correctional Facility in Kingsley, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for two counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(c), and one count of first-degree home invasion, M.C.L.A. 750.110a(2). For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

**II.    FACTS**

Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court.[1]

The victim testified that she was living in an apartment in Detroit, Michigan. Petitioner was the victim's ex-boyfriend. On the evening of November 1, 2003, Petitioner began calling

---

[1] Petitioner was also acquitted of two other counts of first-degree criminal sexual conduct, one count of felon in possession of a firearm, and one count of felony-firearm.

1

the victim numerous times on her cell phone while she was out with her sister. When the victim returned home after 3 a.m. the next morning, Petitioner called her on the land line telephone and informed the victim that he wanted to come over to her apartment. The victim told Petitioner that he could not come over. Later, after the victim had gone to sleep, she heard Petitioner calling her name. Petitioner then turned the light on. The victim asked Petitioner how he had gained access to her apartment and he replied that he wanted to return a set of house keys.

The victim ordered Petitioner to leave her apartment and an argument ensued. As the victim walked toward the stairs to go downstairs, Petitioner grabbed her arm. The victim again asked Petitioner to leave, but he refused. Petitioner began to hold the victim by the arms. When the two got downstairs, Petitioner guided the victim to sofa, sat her down, and then put his body across her body. When the victim tried to grab her cell phone, Petitioner threw it behind the sofa.

Petitioner proceeded to have oral and then vaginal intercourse with the victim, against her will. While Petitioner was still on top of her, the victim observed a gun on the floor and told him that "This is enough" and moved so that he stopped. Petitioner grabbed the gun and told the victim that he was going to hurt or shoot himself. The victim tried to calm him down. Later, when she asked the victim for the gun, he slid it over to her.

At approximately 8:00 a.m. that morning, the victim's mother dropped her two boys off at the apartment. Although Petitioner was still at the apartment, the victim testified that he had calmed down. The victim acknowledged that she returned the gun to Petitioner upon his request. Although she again told Petitioner that he had to leave, however, Petitioner remained at the apartment, using the bathroom and talking briefly with the victim's sons. Petitioner

2

subsequently left. Later, Petitioner left some phone messages with victim, in which he asked her about money that he claimed he had lost.

After Petitioner left, the victim's ex-husband called. She told her ex-husband that Petitioner had come over to the apartment uninvited. After her ex-husband came over, the victim went with him to the police to make a report. A tape recording of Petitioner's phone messages to the victim was played to the jury.

The victim's ex-husband testified that he had called the victim on the morning of the incident and that she said that Petitioner had raped her.

Petitioner testified that he went over to the victim's apartment to return her keys. Petitioner testified that the sex was consensual. Petitioner conceded on cross-examination that he never mentioned returning the keys on the tape recording of eight of his phone calls to the victim from the evening of the incident.

Petitioner's conviction was affirmed on appeal. *People v. McQueen,* No. 255124 (Mich.Ct.App. May 12, 2005); *lv. den.* 474 Mich. 873; 703 N.W. 2d 813 (2005). Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. McQueen,* No. 03-013791-01 (Wayne County Circuit Court, December 22, 2005). The Michigan appellate courts denied Petitioner leave to appeal. *People v. McQueen,* No. 268598 (Mich.Ct.App. September 15, 2006); *lv. den.* 477 Mich. 975; 725 N.W. 2d 30 (2006). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. Trial counsel's failure to impeach the State's only witness with prior inconsistent statements.
>
> II. The State knew the testimony at trial was perjured and had a duty to correct that knowingly false testimony.

## III. STANDARD OF REVIEW

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## IV. ANALYSIS

### A. Claim # 1. The Ineffective Assistance of Counsel Claim.

Petitioner first claims that his counsel was ineffective for failing to cross-examine the victim about an inconsistency between her preliminary examination testimony, in which she testified that she and Petitioner fell asleep after the sexual assault, and her testimony at trial, in

4

which she testified that she remained awake the whole time after the incident.

To prevail on an ineffective assistance of counsel claim *Strickland v. Washington* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). The failure by trial counsel to cross-examine a prosecution witness can constitute ineffective assistance of counsel. *Hence v. Smith*, 37 F. Supp. 970, 983 (E.D. Mich. 1999). However, "[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Millender v. Adams,* 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).

In the present case, Petitioner's trial counsel engaged in an extensive cross-examination of the victim which lasted thirty seven pages. (Tr. 3/22/2004, pp. 174-210). Defense counsel confronted the victim about the fact that she had broken up with Petitioner because he had failed to pay several bills or other financial obligations incurred by them. Defense counsel questioned the victim at length about inconsistencies in her story about whether Petitioner had actually penetrated her vagina with his tongue. Counsel also questioned the victim at length about how Petitioner was capable of forcibly immobilizing the victim with both of his hands while simultaneously performing oral sex on her. In confronting the victim with her testimony about Petitioner having a weapon, counsel was able to get the victim to acknowledge that she never actually saw Petitioner enter her house with a weapon or remove a weapon and place it on

5

the floor. Counsel was able to get the victim to admit that after the sexual assault, she went over and was able to talk Petitioner into voluntarily relinquishing his gun to her. Counsel further elicited testimony from the victim that after being sexually assaulted, as she claimed, she nonetheless felt comfortable enough to leave Petitioner downstairs while she went upstairs to change clothes. The victim further testified, in response to defense counsel's questions, that she later gave Petitioner his gun back when he asked for it. The victim was further confronted with the fact that when her children called her house that morning from her mother's house, she did not ask to speak to her mother so as to tell her that she had been sexually assaulted. Most significantly, the victim admitted that she allowed her children to come home from her mother's house, even though Petitioner was still at her apartment. Finally, the victim admitted on cross-examination that she initially did not want to press charges against Petitioner.

In his closing argument, defense counsel brought up these inconsistencies in the victim's testimony to argue that the sex between the victim and Petitioner was consensual and not forced. Counsel further brought up the fact that no gun was ever recovered from Petitioner by the police, no rape kit test was ever performed on the victim, and there was no testimony presented from any of the victim's neighbors that they heard any screaming or any violence coming from the victim's apartment. (Tr. 3/23/2004, pp. 26-42).

In this case, counsel's decision not to challenge the victim over the inconsistency about whether she and Petitioner fell asleep after the assault was not ineffective assistance of counsel. *See Campbell v. United States,* 364 F. 3d 727, 735 (6th Cir. 2004). Counsel's failure to impeach the victim about this inconsistency did not undermine confidence in outcome of the case, since a variety of other impeachment evidence was admitted in this case. *See Wolfe v. Bock,* 412 F.

6

Supp. 2d 657, 676-77 (E.D. Mich. 2006). Moreover, because this discrepancy was a minor difference in the victim's testimony and is not a basis for concluding that the victim perjured herself (*See* Issue II, *infra*), defense counsel was not ineffective for failing to cross-examine the victim about her prior testimony from the preliminary examination or for failing to assert that the victim perjured herself at trial. *See Greene v. Lafler,* 447 F. Supp. 2d 780, 794 (E.D. Mich. 2006).

In the present case, defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the victim and in his closing argument emphasized the inconsistencies and weaknesses in her testimony, as well as her possible motivations for fabricating these charges against Petitioner. *See Krist v. Foltz,* 804 F. 2d 944, 948-49 (6th Cir. 1986); *Millender,* 187 F. Supp. 2d at 872. Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The Perjury Claim.**

In his second related claim, Petitioner contends that the victim committed perjury by testifying at trial that she and petitioner did not go to sleep after the sexual assault, which was inconsistent with her preliminary examination testimony.

Respondent contends that Petitioner's claim is procedurally defaulted, because he raised it for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise his perjury claim in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

In this case, Petitioner claims that his appellate counsel was ineffective for failing to raise his perjury claim in his appeal of right. Ineffective assistance of counsel may establish

cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000). A habeas petitioner has the burden of establishing a *Giglio* violation. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343; *Malcum,* 276 F. Supp. 2d at 684. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum,* 276 F. Supp. 2d at 684 (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). A habeas petition should be granted if perjury by

8

a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner has failed to establish that the victim committed perjury. Petitioner points to the fact that the victim's testimony at trial about remaining awake after the assault was inconsistent with her preliminary examination testimony, in which she testified that she and Petitioner had fallen asleep after the assault. Because Petitioner merely alleges an inconsistency in the victim's testimony, he has failed to establish that the victim committed perjury, so as to entitle him to habeas relief on this claim. *Malcum,* 276 F. Supp. 2d at 684. Moreover, because there was no evidence that the victim committed perjury at Petitioner's trial, appellate counsel was not ineffective for failing to raise this claim on Petitioner's appeal of right. *See Rowls v. Jamrog,* 193 F. Supp. 2d 1016, 1023-24 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his second claim.

## V. CONCLUSION

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

S/Denise Page Hood<br>Denise Page Hood<br>United States District Judge

Dated: April 18, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record and Willie McQueen, No. 215926, Pugsley Correctional Facility, 7401 W. Walton Rd., Kingsley, MI 49649 on April 18, 2008, by electronic and/or ordinary mail.

S/William F. Lewis<br>Case Manager